1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

INTERNATIONAL TECHNOLOGICAL
UNIVERSITY FOUNDATION,

   Plaintiff,

   v.

WASC SENIOR COLLEGE AND
UNIVERSITY COMMISSION, et al.,

   Defendants.

Case No.  22-cv-04576-BLF

**ORDER GRANTING WSCUC'S,
O'BRIEN'S, AND RYAN'S MOTIONS
TO DISMISS**

[Re:  ECF Nos. 39, 41, 42]

Plaintiff International Technological University Foundation ("ITU") is a nonprofit university.  ITU brought this lawsuit after Defendant WASC Senior College and University Commission ("WSCUC"), an accrediting body, voted to withdraw ITU's accreditation.  ITU brings claims against WSCUC for not following rules and procedures outlined in WSCUC's Handbook of Accreditation.  ITU also brings claims against individual Defendants Greg O'Brien, ITU's former President, and Barry Ryan, ITU's former Provost.  ITU alleges that O'Brien and Ryan stole ITU's trade secrets and breached various duties owed to ITU to benefit one of ITU's competitors—Defendant, Sofia University, SPC.

Before the Court are motions to dismiss ITU's complaint (Compl., ECF No. 1) filed by WSCUC, O'Brien, and Ryan.  *See* WSCUC Mot., ECF No. 41; O'Brien Mot., ECF No. 42; Ryan Mot., ECF No. 39.  ITU opposes the motions.  *See* Opp'n, ECF No. 44.  WSCUC, O'Brien, and Ryan have filed separate replies.  *See* WSCUC Reply, ECF No. 60; O'Brien Reply, ECF No. 62; Ryan Reply, ECF No. 59.  Defendant Sofia has answered ITU's complaint.  *See* Sofia Ans., ECF No. 18.

The Court held a hearing on the motions to dismiss on March 30, 2023.  For the reasons

1    stated at the hearing and provided below, WSCUC's, O'Brien's, and Ryan's respective motions to

2    dismiss are hereby GRANTED.

3    **I.    BACKGROUND**

4        **A.    Founding and Early Years**

5        ITU is a nonprofit university that was founded in 1994 by Dr. Shu-Park Chan.  Compl.

6    ¶ 11.  Dr. Chan served as ITU's President and CEO from its founding until his retirement in 2010.

7    *Id.* ¶¶ 14, 20.

8        In 2005, Dr. Chan's son, Yau-Gene Chan, joined ITU as Executive Vice President.  *Id.*

9    ¶ 15.  At the time, ITU was on the brink of bankruptcy, with less than two months of cash and

10    only 18 students.  *Id.* ¶ 16.

11        **B.    WSCUC Accreditation**

12        Beginning in 2007, ITU contracted with Greg O'Brien, an education industry consultant, to

13    attempt to earn accreditation from WSCUC.  *Id.* ¶¶ 17-18.  At the time, O'Brien was also a

14    consultant with Sofia University and California Northstate University ("CNU").  *Id.* ¶ 18.  Both

15    Sofia and CNU are competitors of ITU.  *Id.* ¶ 19.

16        On February 22, 2013, ITU gained accreditation with WSCUC.  *Id.* ¶ 21.  However, in

17    May 2014, WSCUC denied accreditation for ITU's online program.  *Id.* ¶ 25.  As a result of this

18    denial and other circumstances, ITU did not renew its contract with O'Brien.  *Id.* ¶ 26.

19        Following ITU's decision not to renew its contract with O'Brien, O'Brien became

20    Chairman of the Board of Trustees at Sofia.  *Id.* ¶ 27.  O'Brien and the Sofia Board appointed

21    ITU's CFO, Edward Lam, as Sofia's CFO.  *Id.* ¶ 28.  Lam served as CFO of both ITU and Sofia.

22    *Id.* ¶ 29.

23        **C.    Third-Party Complaint**

24        In December 2014, at the urging of O'Brien, Lam, and other members of the Sofia board,

25    seven ITU employees (including Lam) submitted a third-party complaint to WSCUC.  *Id.* ¶ 32.

26    The complaint alleged accreditation noncompliance at ITU and directed blame at Yau-Gene Chan,

27    who by then had become President and CEO.  *Id.* ¶¶ 32, 20.

28        WSCUC responded to the complaint by scheduling a site visit for February 6, 2015.  *Id.*

¶ 33.  During the visit, WSCUC told the ITU Board that WSCUC would withdraw accreditation unless the ITU Board removed Yau-Gene Chan as President and CEO.  *Id.* ¶ 34.  Under pressure from WSCUC and the ITU Board, Yau-Gene Chan stepped down on February 8, 2015.  *Id.* ¶ 36.

### D.   O'Brien Tenure

The ITU Board appointed O'Brien as President of ITU the same day Yau-Gene Chan stepped down.  *Id.*  O'Brien immediately negotiated a $360,000 annual salary and other benefits for himself and gave pay raises to the ITU employees who submitted the third-party complaint to WSCUC.  *Id.* ¶¶ 37-38.  He also hired his friend Barry Ryan, a WSCUC commissioner, to a "no show" position as ITU's Provost with a $250,000 annual salary.  *Id.* ¶ 44.  O'Brien remained Chairman of the Board of Trustees at Sofia for at least some of the time he was ITU's President.  *Id.* ¶ 40.

ITU's enrollment and financials declined during O'Brien's tenure.  *Id.* ¶ 46.  For the 2016, 2017, and 2018 fiscal years, ITU posted net losses of $1.7, $1.5, and $4.2 million, respectively.  *Id.* ¶ 67.c.  And by July 2018, ITU's cash balance had dropped from $20 million to $6.9 million, and its enrollment had dropped from 1,514 to 539.  *Id.* ¶ 67.d.  Nevertheless, that month, WSCUC renewed ITU's accreditation for six years.  *Id.* ¶ 48.

By the end of O'Brien's tenure in October 2019, ITUs enrollment had fallen to 448 and its financial reserves had been depleted.  *Id.* ¶ 49.  O'Brien had also attempted to transfer ITU's remaining students to Sofia.  *See id.* ¶ 50.  He also negotiated a lucrative severance package for himself, including a $90,000 payment from ITU and an agreement by ITU to release its claims against him.  *Id.* ¶ 51.

### E.   Reinstatement of Yau-Gene Chan

After O'Brien's exit, the ITU Board reinstated Yau-Gene Chan as President.  *Id.* ¶ 54, 58.  Yau-Gene Chan immediately personally loaned ITU $300,000.  *Id.* ¶ 55.  He also implemented staff reductions, including eliminating Ryan's position.  *Id.* ¶ 56.

Three days after Yau-Gene Chan was reinstated in October 2019, WSCUC issued an Order to Show Cause against ITU and scheduled a special visit.  *Id.* ¶ 58.  On February 26, 2020, WSCUC issued a letter identifying seven areas for ITU to address.  *Id.* ¶ 60.

United States District Court
Northern District of California

1    On May 14-16, 2021, WSCUC sent a team to inspect ITU.  *Id.* ¶ 61.  After the inspection,

2    WSCUC issued a report applauding ITU's progress in addressing the areas of concern WSCUC

3    had identified in February 2020.  *Id.* ¶ 62.

4    **F.    Withdrawal of Accreditation and Appeal**

5    On March 9, 2022, ITU received a letter from WSCUC informing ITU that WSCUC had

6    decided to withdraw ITU's accreditation.  *Id.* ¶ 64.  The Withdrawal Letter suggested that ITU was

7    in violation of several WSCUC Criteria for Review, including Criteria for Review 3.4, which

8    requires that the institution be financially stable and have resources sufficient to ensure long-term

9    viability.  *Id.* ¶¶ 65, 76, 80.  The Withdrawal Letter also faulted ITU for having unrealistic

10   enrollment management plans, eliminating staff positions and reducing key leadership capacity,

11   and failing to provide evidence of integrated planning between resource allocation and educational

12   objectives.  ¶¶ 68, 71, 73.

13   On April 8, 2022, ITU appealed WSCUC's decision to withdraw accreditation.  *Id.* ¶ 84.

14   That appeal remains pending.

15   **II.    LEGAL STANDARD**

16   "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

17   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

18   *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

19   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

20   as true all well-pled factual allegations and construes them in the light most favorable to the

21   plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

22   Court need not "accept as true allegations that contradict matters properly subject to judicial

23   notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

24   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

25   (internal quotation marks and citations omitted).  While a complaint need not contain detailed

26   factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

27   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

28   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

United States District Court
Northern District of California

4

1    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

2    On a motion to dismiss, the Court's review is limited to the face of the complaint and matters

3    judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star*

4    *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

5    Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the

6    circumstances constituting fraud or mistake," including "the who, what, when, where, and how of

7    the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

8    (internal quotation marks omitted).  However, "Rule 9(b) requires only that the circumstances of

9    fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule

10   8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

## III.    DISCUSSION

### A.    WSCUC's Motion to Dismiss (Claims 4 and 5)

13   ITU asserts two claims against WSCUC based on WSCUC's Handbook of Accreditation

14   and associated policies and guidelines (the "Handbook").  *See* Compl. ¶¶ 123, 128.  ITU alleges

15   that WSCUC (1) breached the Handbook through the implied covenant of good faith and fair

16   dealing (Claim 4) and (2) violated the Handbook's Conflict-of-Interest Policy (Claim 5).  *See*

17   Compl. ¶¶ 121-132.

18   WSCUC argues that the claims should be dismissed on four grounds.  First, WSCUC

19   argues that the Handbook is not a contract and therefore provides no basis for a claim for breach of

20   contract.  WSCUC Mot. 3-7.   Second, WSCUC argues that ITU's claims are preempted by the

21   Higher Education Act.  *Id.* at 7-10.  Third, WSCUC argues that ITU's claim is not ripe because

22   ITU has failed to exhaust its administrative remedies.  *Id.* at 10-11.  Fourth, WSCUC argues that

23   ITU has failed to adequately allege the breach, causation, or damages elements of a claim for

24   breach of contract.  *Id.* at 12-13.  ITU responds to each argument.  Opp'n 5-14.

25   The Court first addresses WSCUC's argument that ITU's claims fail because the

26   Handbook is not a contract.  "[T]he elements of a cause of action for breach of contract are (1) the

27   existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

28   breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.

United States District Court
Northern District of California

United States District Court
Northern District of California

4th 811, 821 (2011).  WSCUC contends that ITU has not and cannot plausibly allege the first element because the Handbook is not a contract.

The Ninth Circuit has not yet addressed whether accreditation policies and guidelines like those comprising the Handbook constitute a contract.  Other circuits addressing the matter have uniformly held that such policies and guidelines are not a contract.  *See Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 181 (4th Cir. 2015) ("The Standards of Accreditation do not constitute a binding contract between the agency and the accredited educational institutions because the Commission can alter the alleged "contract" at will and, thus, is not bound by its terms."); *Chicago Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Sch. & Colleges*, 44 F.3d 447, 450 (7th Cir. 1994) "principles of federal administrative law"—not contract law—"supply the right perspective for review of accrediting agencies' decisions").

In *Professional Massage*, the Fourth Circuit considered whether an accrediting body's standards of accreditation constituted a binding contract between the accrediting body and a massage program and determined that they did not. 781 F.3d at 180-81.  Applying Virginia law, the Fourth Circuit held that "[t]he Standards of Accreditation do not constitute a binding contract between the agency and the accredited educational institutions because the Commission can alter the alleged 'contract' at will and, thus, is not bound by its terms." *Id.* at 181 (citing the accrediting body's standards).  This was because, "[u]nder Virginia law, '[b]oth parties must be bound or neither is bound.'" *Id.* (quoting *Town of Vinton v. City of Roanoke*, 80 S.E.2d 608, 617 (1954)).

In *Chicago School*, the Seventh Circuit held that contract law principles were inapplicable to challenges by institutions to accreditation agencies' decisions.  44 F.3d at 449-50.  That court explained:

> [A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches. The "contract" the School wants to enforce is not a bargained-for exchange but a set of rules developed by an entity with many of the attributes of an administrative agency. Accreditation groups adopt and change their rules unilaterally; by posting an application fee a trade school cannot lock in a favorable set of rules. . . . If accreditation—which the Secretary of Education treats as a sort of license or certificate—were bestowed by the federal agency directly,

1

2

3

> no one would suppose that state law governed. Instead the
> Administrative Procedure Act would govern judicial review, and the
> court would inquire whether the agency's decision was "arbitrary,
> capricious, an abuse of discretion, or otherwise not in accordance with
> law" or reached "without observance of procedure required by law",
> 5 U.S.C. § 706(2)(A), (D).

4   *Id.* at 449.  Following this reasoning, the Seventh Circuit held that "principles of federal

5   administrative law supply the right perspective for review of accrediting agencies' decisions." *Id.*

6   at 450.  This rationale has been adopted by at least one other circuit court.  *See Found. for Interior*

7   *Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 532 (6th Cir. 2001) (citing

8   *Chicago School* and two district court cases).

9          The Court finds these decisions persuasive and concludes that the Handbook is not a

10   contract between ITU and WSCUC.  Like the accrediting body in *Professional Massage*, WSCUC

11   can amend the Handbook unilaterally.  *See* Handbook 2 ("The Commission reserves the right to

12   make changes to the 2013 Handbook and all related policies and procedures at any time, in order

13   to comply with new federal requirements or in response to new needs of institutions."), ECF No.

14   41-2.  That an amendment to the Handbook must comply with federal law does not undermine that

15   the amendment would be unilateral in nature.  Thus, the Handbook creates no mutuality of

16   obligation between the WSCUC and ITU.  Like Virginia law, California law requires mutuality of

17   obligation to have a valid bilateral contract.  *See, e.g.*, *Mattei v. Hopper*, 51 Cal. 2d 119, 122

18   (1958) ("[F]or the contract to bind either party, both must have assumed some legal obligations.

19   Without this mutuality of obligation, the agreement lacks consideration and no enforceable

20   contract has been created.").  Therefore, like the accreditation standards in *Professional Massage*,

21   the Handbook is not a contract.

22          The rationale of other federal circuits, including the Seventh Circuit in *Chicago School*,

23   confirms that the Handbook is not a contract. The relationship between an accrediting body and an

24   institution seeking accreditation is more akin to the relationship between an applicant and an

25   administrative or licensing body than a contractual relationship.  *See Chicago Sch.*, 44 F.3d at 449-

26   50.  Federal courts have developed a body of common law to address disputes in this context,

27   which they have determined to provide a more appropriate structure for judicial review.  *See Pro.*

28   *Massage*, 781 F.3d at 170-72, 180-81.  This body of law confirms that "principles of federal

United States District Court
Northern District of California

7

administrative law"—not contract law—"supply the right perspective for review of accrediting agencies' decisions." *See Chicago Sch.*, 44 F.3d at 450.

The Ninth Circuit's decision in *Keams v. Tempe Technical Institute, Inc.,* 39 F.3d 222 (9th Cir. 1994), does not undermine the conclusion that the Handbook is not a contract.  In *Keams*, the Ninth Circuit held that federal law does not preempt tort claims under state law by trade school students pursuing a theory of "negligent accreditation."  *See Keams*, 39 F.3d at 227.  This Court's decision does not turn on whether federal law preempts ITU's claims for breach of contract.  And the *Keams* Court did not address whether the accreditation standards at issue in that case were a contract.  Accordingly, the *Keams* decision does not alter the Court's conclusion that the Handbook is not a contract.

Because the Handbook is not a contract, ITU cannot state a claim for breach of contract (Claim 4) or "violation" of certain terms of that contract concerning conflicts of interest (Claim 5). Furthermore, the Court finds that dismissal of these claims without leave to amend is appropriate because any amendment would be futile.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (district court may deny leave to amend where amendment would be futile).  Accordingly, WSCUC's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.  The Court does not reach WSCUC's alternate bases for dismissal.

Although ITU's claims for violations of the Handbook do not survive when pled as claims for breach of contract, the Court's dismissal is without prejudice ITU filing a common law due process claim against WSCUC for alleged failures to comply with its own procedures.  *See generally William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 12 n.11 (D.D.C. 2018) (summarizing case law on common law due process claims against accrediting bodies), *aff'd sub nom. William Loveland Coll. v. Distance Educ. Accrediting Comm'n*, 788 F. App'x 5 (D.C. Cir. 2019).  The Court notes, however, that ITU may bring such a claim only after ITU exhausts its administrative remedies.  *See id.* at 14-15 (analyzing Higher Education Act, 20 U.S.C. § 1001 *et seq.*, and finding congressional intent to require exhaustion).  The Complaint alleges that ITU has appealed WSCUC's decision to withdraw accreditation.  Compl. ¶ 84.  Thus, any due process claim should be brought only after completion of the appeal.

8

**B.    O'Brien's Motion to Dismiss (All Claims Asserted Against O'Brien)**

ITU asserts claims against O'Brien for trade secret misappropriation under 18 U.S.C. §§ 1836, 1839 (Claim 1); violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961, 1962, 1964, predicated on trade secret misappropriation (Claim 2) and wire fraud (Claim 3); breach of fiduciary duty and duty of loyalty (Claim 6); fraudulent inducement (Claim 7); conversion (Claim 8); and breach of employment contract (Claim 9).

O'Brien argues that ITU's claims against him must be dismissed because he and ITU negotiated a mutual release and waiver of all claims as part of his Separation Agreement when he resigned from ITU. Mot. 1, 3-5. O'Brien further argues that ITU's fraudulent inducement claim, which asks that the Court declare the Separation Agreement void and unenforceable, fails to state a claim and therefore does not undermine the release. *Id.* at 5-6. O'Brien contends that ITU's fraudulent inducement claim fails because ITU does not allege that it was unaware of or could not have reasonably discovered the claims it asserts against him. *Id.*

ITU responds that the release is void because it was procured by fraud. Opp'n 14. According to ITU, O'Brien fraudulently induced ITU into granting him the release by concealing his wrongdoing from ITU before the parties entered into their agreement. *Id.* at 15. ITU does not dispute that the release covers the claims at issue if it is enforceable.

Under California law, the elements for a fraudulent inducement claim are: (1) a misrepresentation, false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce plaintiff to enter into a contract; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). "Fraud in the inducement . . . occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Rosenthal v. Great Western Fin. Securities Corp.* 14 Cal. 4th 394, 415 (1996) (internal quotation marks omitted). ITU must plead its fraudulent inducement claim with particularity under Federal Rule of Civil Procedure 9(b). *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019).

ITU has not plausibly alleged any misrepresentation, false representation, or concealment

because the complaint does not adequately allege what was concealed or how O'Brien concealed it. ITU alleges that "O'Brien induced ITU to enter into a Severance/Separation Agreement with O'Brien even through O'Brien knew that he had embezzled, breach[ed] fiduciary duties, breached duties of loyalty, converted ITU's funds, and assisted others in converting ITU's funds." Compl. ¶ 161. But ITU alleges no details about these acts, much less the "who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" required by Rule 9(b). *See Depot*, 915 F.3d at 668.

For example, the most detailed allegation in the Complaint about O'Brien's alleged embezzlement is that O'Brien and ITU's CFO "conspired to embezzle millions of dollars from ITU to dummy vendors that were owned, controlled, and/or affiliated with ITU's Chief Technology Officer and another faculty member." Compl. ¶ 57.b. This allegation is missing key details, including names of the "dummy vendors," how O'Brien allegedly embezzled money to them, and how O'Brien concealed the alleged embezzlement from ITU. There's no excuse for ITU's failure to allege these details, as this information would come from ITU's own transaction records. And without these details, ITU's Complaint contains only conclusory allegations that O'Brien embezzled money from ITU and concealed it. The Court need not accept such conclusory allegations as true. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.

ITU's complaint also does not allege justifiable reliance. To plead a fraudulent inducement claim, a plaintiff must establish "'justifiable' reliance, i.e., circumstances were such to make it *reasonable* for the plaintiff to accept the defendant's statements without an independent inquiry or investigation." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 794 (2013) (quotation marks and internal alterations omitted) (emphasis in original). "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." *Id.* ITU's theory appears to be that O'Brien knew of claims that ITU had against him but did not disclose those claims before ITU released the claims against him. But ITU's Complaint contains no factual allegations to support that ITU did not know about the claims before it signed the release. Nor does it allege facts to support that it was reasonable for ITU to not know of the claims. ITU has therefore not alleged facts to support that it justifiably relied on

10

O'Brien's alleged nondisclosure of potential claims against him.

In sum, ITU has failed to plausibly allege sufficient facts to support its fraudulent inducement claim.  In the absence of these facts and the lack of dispute that ITU's claims otherwise fall within the scope of the mutual release and waiver in the Separation Agreement, the Court finds that ITU has failed to state a claim against O'Brien.  All claims against O'Brien are therefore DISMISSED WITH LEAVE TO AMEND.

### C.   Ryan's Motion to Dismiss

ITU asserts claims against Ryan for trade secret misappropriation under 18 U.S.C. §§ 1836, 1839 (Claim 1); violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961, 1962, 1964, predicated on trade secret misappropriation (Claim 2) and wire fraud (Claim 3); breach of fiduciary duty and duty of loyalty (Claim 6); and breach of employment contract (Claim 9).[1]  *See* Compl.  The Court addresses each claim in turn.

#### 1.   Trade Secret Misappropriation (Claim 1)

The Court first addresses ITU's claim that Ryan misappropriated ITU's trade secrets.  "To state a claim for trade secret misappropriation under [the Defense of Trade Secrets Act (DTSA), 18 U.S.C. § 1836] . . . , a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)).  Ryan argues that ITU's claim against him under DTSA fails because ITU has not identified any misappropriated trade secret with sufficient particularity, alleged any steps it has taken to protect its trade secret, alleged any details about the alleged misappropriation, or alleged any harm suffered from the alleged misappropriation.  Ryan Mot. 2-3.

##### a.   Ownership of a Trade Secret

The Court first addresses whether ITU has adequately alleged ownership of a trade secret.

---

[1] ITU asserts separate causes of action against O'Brien and Ryan for breach of employment contract but identifies them both in the Complaint as the "Ninth Cause of Action."  The Court follows ITU's convention for the purposes of this order.

United States District Court
Northern District of California

Under DTSA, "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

ITU alleges that it "has numerous trade secrets, including but not limited to student lists, potential student lists, contact information for students, contact information for potential students, admissions strategies, and marketing strategies ('ITU Trade Secrets')."  Compl. ¶ 86.  ITU further alleges that it "has taken reasonable measures to keep the ITU Trade Secrets secret."  *Id.* ¶ 87.

Ryan contends that ITU has not adequately alleged ownership of a trade secret because ITU has not described the alleged trade secrets with sufficient particularity and has not alleged facts about any steps ITU has taken to protect its purported trade secrets.  Ryan Mot. 2-3.  ITU responds that its allegations are sufficient because ITU operates in a niche market.  Opp'n 18-19.

The Court notes that ITU added details about the alleged trade secrets in its opposition to Ryan's motion to dismiss.  Opp'n 18-19.  For example, ITU's opposition states that ITU caters to a "niche customer base (international students seeking first and second graduate degrees)," and ITU's student list and potential student list contains "identification of and personal information about each student (non-public information including . . . names of students, student addresses, student citizenship status, information about student class schedules and academics, and financial information."  *Id.*  Because these details are not alleged in ITU's complaint and ITU has not demonstrated that this information should otherwise be considered part of the pleadings, the information cannot save ITU's claims from dismissal.  *See Broam v. Bogan,* 320 F.3d 1023, 1026 n.2 (9th Cir.2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not*

12

United States District Court
Northern District of California

1  look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to

2  a defendant's motion to dismiss.") (citation omitted) (emphasis in the original).

3        The Court finds that ITU has not described the alleged trade secrets with sufficient

4  particularity.  In alleging trade secret misappropriation, "[a] plaintiff need not spell out the details

5  of the trade secret, but must describe the subject matter of the trade secret with sufficient

6  particularity to separate it from matters of general knowledge in the trade or of special persons

7  who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within

8  which the secret lies." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D.

9  Cal. 2019) (internal quotation marks omitted).  Here, ITU's allegations are insufficient because

10  ITU "has set out its purported trade secrets in broad, categorical terms, more descriptive of the

11  types of information that generally *may* qualify as protectable trade secrets than as any kind of

12  listing of particular trade secrets [ITU] has a basis to believe actually were misappropriated." *See*

13  *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar.

14  23, 2018) (emphasis in original).  For example, ITU alleges that the trade secrets include student

15  and prospective student lists, but ITU provides no details about the lists, such as whether they

16  pertain to a certain year or how they were created.  ITU's allegations that the trade secrets include

17  admissions and marketing strategies are deficient for the same reasons.  Without more detail,

18  neither Ryan nor the Court can "ascertain at least the boundaries within which the trade secret

19  lies." *Id.*  The Court therefore finds that ITU has not described the alleged trade secrets with

20  sufficient particularity.

21        The Court also finds ITU's allegations deficient because ITU has not alleged any facts to

22  support that it "has taken reasonable measures to keep such information secret." *See* 18 U.S.C.

23  § 1839(3)(A).  ITU alleges in conclusory terms that it "has taken reasonable measures to keep the

24  ITU Trade Secrets secret."  Compl. ¶ 87.  This allegation is insufficient to support a claim because

25  it is nothing more than a threadbare recital of an element of the claim.  *See Iqbal*, 556 U.S. at 678.

26        ITU raises in its opposition that ITU is required to comply with the Family Educational

27  Rights and Privacy Act (FERPA), which sets out requirements for educational institutions to

28  protect the privacy of parents and students.  Because ITU raises this information in its opposition

1    and does not otherwise demonstrate that the Court can properly consider it as part of the pleadings,

2    the information cannot save ITU's claim from dismissal.  *See Broam,* 320 F.3d at 1026 n.2.  To

3    the extent ITU intends to include this fact in any amended pleading as a basis for establishing that

4    ITU has taken reasonable measures to keep its trade secret information secret, ITU should allege

5    any steps it has taken to comply with FERPA's privacy requirements.

6           In sum, ITU has not plausibly alleged the first element of its trade secret misappropriation

7    claim—that it owned a trade secret—because ITU has not identified any trade secret with

8    sufficient particularity and has not alleged facts to support an inference that ITU took reasonable

9    measures to protect any purported trade secrets.

10                            **b.  Misappropriation**

11          The Court next addresses whether ITU has adequately alleged that Ryan misappropriated a

12   trade secret.  Ryan argues that ITU's DTSA claim against him fails because ITU has not alleged

13   facts about what Dr. Ryan allegedly disclosed.  Ryan Mot. 3.  ITU does not respond to this

14   argument in its briefing.

15          The Court agrees with Ryan that ITU has not adequately alleged facts to support its claim

16   that Ryan misappropriated trade secrets.   ITU alleges that "[w]hile he was Provost of ITU, Ryan

17   disclosed ITU Trade Secrets to Sofia University, or to individuals who passed the ITU Trade

18   Secrets to Sofia University, to assist Sofia University with competing with ITU and stealing

19   students from ITU."  Compl. ¶ 93.  ITU does not identify which of its purported trade secrets Ryan

20   shared or whom he shared them with.  Without these or any supporting facts, ITU's allegation

21   amounts to little more than a bare legal conclusion that Ryan misappropriated ITU's trade secrets.

22   The Court need not accept such conclusory allegations.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d

23   at 1055 (noting that a court need not accept as true "allegations that are merely conclusory,

24   unwarranted deductions of fact, or unreasonable inferences").  Accordingly, the Court finds that

25   ITU has not plausibly alleged that Ryan misappropriated ITU's trade secrets.

26                            **c.  Damage**

27          The Court finally addresses whether ITU has adequately alleged that Ryan's alleged

28   misappropriation damaged ITU.  Ryan argues that ITU has offered only conclusory allegations of

United States District Court
Northern District of California

1    harm.  Ryan Mot. 3.  ITU disputes Ryan's assertion.  ITU notes that it has alleged that Ryan's

2    alleged misappropriation has "significantly harmed ITU's ability to attract and keep students,

3    which has thereby compromised ITU's financial situation."  Opp'n 20-21 (citing Compl. ¶ 102).

4    ITU also notes that it seeks "damages for actual loss" and "damages for unjust enrichment" and

5    that DTSA provides for reasonable royalties for unauthorized use of trade secrets.

6         The Court finds that ITU has not plausibly alleged that Ryan's alleged misappropriation

7    damaged ITU.  ITU alleges no facts to support its conclusory assertion that Ryan's alleged

8    misappropriation "significantly harmed ITU's ability to attract and keep students, which has

9    thereby compromised ITU's financial situation."  Compl. ¶ 102.  This conclusory assertion is

10   insufficient plead the harm necessary to survive a motion to dismiss.  *See In re Gilead Scis. Sec.*

11   *Litig.*, 536 F.3d at 1055 (stating that a court need not accept conclusory allegations in evaluating a

12   motion to dismiss).  That ITU requests damages for its actual loss and unjust enrichment and may

13   potentially seek a reasonable royalty also does not help ITU.  These requests provide no factual

14   allegations to support a plausible inference that ITU was harmed.  Accordingly, the Court finds

15   that ITU has not plausibly alleged that Ryan's alleged misappropriation of ITU's trade secrets

16   damaged ITU.

17                                    *      *      *

18        In sum, the Court finds that ITU has not plausibly alleged the elements necessary to

19   support a trade secret misappropriation claim against Ryan.  Accordingly, ITU's trade secret

20   misappropriation claim against Ryan is DISMISSED WITH LEAVE TO AMEND.  The Court

21   notes that the deficiencies would apply equally to defendant O'Brien and suggests any amendment

22   to include additional allegations against O'Brien as well.

23                        **2.  RICO Claims (Claims 2 and 3)**

24        ITU brings its civil RICO claim under 18 U.S.C. § 1962(c).  *See* Opp'n 21.  "To state a

25   claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern

26   (4) of racketeering activity."  *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008) (internal

27   quotation marks omitted).  Ryan argues that ITU has not plausibly alleged the first, third, and

28

United States District Court
Northern District of California

15

fourth elements of its claims—conduct, a pattern, and racketeering activity.  Ryan Mot. 4-6.[2]

### a. Racketeering Activity

The Court first addresses whether ITU has plausibly alleged the necessary predicate "racketeering activity" to support its RICO claims.  "'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code."  *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  Relevant to this case, this includes the predicate acts of trade secret misappropriation under 18 U.S.C. § 1832 and wire fraud under 18 U.S.C. § 1343.  *See Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-CV-1865-GPC (DEB), 2022 WL 6281793, at *23 (S.D. Cal. Oct. 7, 2022).

### i. Trade Secret Misappropriation

The Court begins with ITU's RICO claim predicated on Ryan's alleged trade secret misappropriation (Claim 2).  In the Court's discussion of ITU's standalone claim for trade secret misappropriation (Claim 1), the Court explained that ITU has not plausibly alleged the elements necessary to support that claim.  The Court therefore finds that ITU has not plausibly alleged the "racketeering activity" necessary to support its RICO claim predicated on trade secret misappropriation.

### ii. Wire Fraud

The Court next turns to ITU's RICO claim predicated on Ryan's alleged wire fraud (Claim 3).  "The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud," *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013), where intent to defraud is intent to "to deprive the victim of money or property by means of deception," *see United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020).  "RICO fraud claims must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b)."  *RJ v. Cigna Health & Life Ins. Co.*, No. 5:20-CV-

---

[2] In its opposition, ITU states that Ryan challenges the "enterprise" element rather than the "conduct" element.  Opp'n 21.  This is understandable, as Ryan's motion contains a heading reading, "No Participation in Enterprise."  Ryan Mot. 5.  Ryan's arguments under that heading are directed to the conduct element, however.  *See id.*  The parties' labeling of the issue is immaterial to the Court's analysis.

1    02255-EJD, 2022 WL 4021890 (N.D. Cal. Sept. 2, 2022) (citing *Lancaster Cmty. Hosp. v.*

2    *Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

3           Ryan argues that ITU's complaint does not allege facts to support an inference that he

4    committed wire fraud.  Ryan Mot. 4.  Ryan contends that ITU fails to identify a single

5    misrepresentation made by Ryan and fails to allege the particulars of any such misrepresentation.

6    *Id.* at 5.  Ryan further contends that ITU has not alleged that he intended to obtain money from

7    anyone who was allegedly deceived.  *Id.*  ITU concedes that it has not alleged any "specific

8    communications" or "specific dates or times."  Opp'n 23.  ITU argues, however, that its

9    allegations are sufficient because it alleged "a specific time period (2015-2019) over which Ryan

10   sent fraudulent communications to facilitate wrongdoing relating to ITU and Sofia University."

11   *Id.*

12          The Court finds that ITU has not adequately pled its wire fraud allegations under Rule

13   9(b).  "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity

14   the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."

15   *Lancaster*, 940 F.2d at 405.  ITU has not alleged any of these facts.  ITU alleges that "O'Brien,

16   Ryan, and Does 1-10 engaged in numerous acts of wire fraud by transmitting to others, including

17   but not limited to employees, Board members, and other personnel associated with ITU and/or

18   WSCUC, numerous email, text, and other communications comprising false pretenses relating to

19   ITU and their efforts to plunder ITU to benefit themselves and Sofia University" and that "these

20   transmissions were made on different dates over a period beginning in or around 2015 (or possibly

21   earlier) and continuing into 2019 or possibly later."  Compl. ¶¶ 114-15.  ITU's allegations include

22   no facts about the content of any fraudulent communication.  Nor do they include any specifics

23   about when any fraudulent communication was made.  The allegations also fail to identify which,

24   if any, communication is attributable to Ryan.  Given these deficiencies, the Court finds that ITU's

25   allegations do not satisfy Rule 9(b)'s specificity requirement.

26          ITU's allegations are also deficient because ITU does not allege the requisite intent.  To be

27   guilty of wire fraud, a defendant must intend "to obtain money or property from the one who is

28   deceived."  *Cf. United States v. Lew*, 875 F.2d 219 (9th Cir. 1989) (describing intent required for

United States District Court
Northern District of California

17

1   mail fraud claim); *see also Miller*, 953 F.3d at 1101 n.5 ("[C]ourts typically interpret the mail and

2   wire fraud statutes the same way, as their language is largely identical.").  Here, ITU alleges that

3   Ryan transmitted the allegedly fraudulent communications to "others, including but not limited to

4   employees, Board members, and other personnel associated with ITU and/or WSCUC."  Compl. ¶

5   114.  But ITU includes no factual allegation to suggest that Ryan intended to obtain money or

6   property from any of these "others."  The Court therefore finds that ITU has failed to allege the

7   intent necessary to support that Ryan committed wire fraud.

8           Because ITU has not plausibly alleged that Ryan committed wire fraud, ITU has not

9   plausibly alleged the "racketeering activity" necessary to support its RICO claim predicated on

10   wire fraud.

11                  **b.  Conduct**

12          The Court next addresses whether ITU has plausibly alleged the requisite "conduct."

13   Liability for participating in the "conduct" of a RICO enterprise extends only to those who "have

14   some part in directing [the enterprise's] affairs."  *Reves v. Ernst & Young,* 507 U.S. 170, 179

15   (1993).  A defendant need not be in charge of or have "significant control over or within [the]

16   enterprise."  *Id.* at 179 n.4 (citation omitted).  But more is required than "simply being involved,"

17   and "[s]imply performing services for the enterprise does not rise to the level of direction."

18   *Walter,* 538 F.3d at 1249.  Relevant considerations include whether the defendant "occup[ies] a

19   position in the 'chain of command'. . . through which the affairs of the enterprise are conducted,"

20   whether the defendant "knowingly implement[ed] the decisions of upper management," and

21   whether the defendant's "participation was 'vital' to the mission's success."  *See id.* at 1249.

22          Ryan argues that ITU has not alleged the conduct necessary to state a RICO claim because

23   the Complaint fails to allege that that Ryan did anything to direct the alleged enterprise's affairs.

24   Ryan Mot. 5.  ITU responds that its allegations make clear that Ryan was one of two primary

25   leaders in the enterprise.  Opp'n 21-22.

26          The Court finds that ITU has not plausibly alleged that Ryan has participated in the

27   requisite conduct of the alleged enterprise.  Regarding the RICO claim predicated on trade secret

28   misappropriation, ITU alleges that "O'Brien, Ryan, and Does 1-10 engaged in numerous acts of

United States District Court
Northern District of California

trade secret appropriation" and "repeatedly misappropriated ITU Trade Secrets from ITU as part of an ongoing enterprise to promote Sofia University's financial progress to the detriment of ITU." Compl. ¶¶ 107-08.  Regarding the RICO claim predicated on wire fraud, ITU alleges that "O'Brien, Ryan, and Does 1-10 engaged in numerous acts of wire fraud" and "repeatedly transmitted false representations as part of an ongoing enterprise to promote Sofia University's progress to the detriment of ITU." *Id.* ¶¶ 114-17.  Neither these allegations nor any other allegations in ITU's complaint provides facts suggesting that Ryan had a part in directing any enterprise's affairs.  At best, the complaint alleges Ryan's mere involvement in an enterprise.  This is not enough to allege the conduct necessary to state a RICO claim.  *See Walter,* 538 F.3d at 1249 (plaintiff failed to allege requisite "conduct" where "pleadings show[ed] that [defendant] and her firm were part of the enterprise but fail[ed] to show that she or her firm had some part in directing its affairs." (internal quotation marks omitted)).  Accordingly, the Court finds that ITU has not plausibly alleged that Ryan participated in the necessary "conduct" for either of its RICO claims.

### c.  Pattern

The Court next addresses whether ITU has plausibly alleged a "pattern."  A "pattern of racketeering activity," as defined by the statute, "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years" of the former.  18 U.S.C. § 1961(5).  "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at 241.  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *Id.* at 242.  Open-ended continuity can be shown where there is a "specific threat of repetition extending indefinitely," "the predicate acts or offenses are part of an ongoing entity's regular way of doing business," or "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes."  *Id.* at 242-43.

United States District Court
Northern District of California

1    Ryan argues that ITU has not alleged a "pattern" of racketeering activity.  Ryan contends

2   that the only specific instance of misconduct alleged is that in or around 2019 O'Brien (or

3   potentially O'Brien and Lam) attempted to transfer ITU's students to Sofia as O'Brien's final act

4   before exiting ITU.  Ryan Mot. 5-6.  Ryan argues that even if this allegation is accepted as true it

5   defeats any claim of predicate acts spanning a significant amount of time and or a continuing

6   threat.  *Id.* at 6.  Ryan further argues that ITU's broad allegations that Ryan participated in

7   "numerous acts" between 2015 and 2019 does not save ITU's claims because ITU fails to allege

8   facts regarding Ryan's involvement with any trade secret misappropriation or wire fraud.  *Id.*  ITU

9   responds that "ITU's Complaint sufficiently pleads closed-ended continuity, alleging that Ryan's

10  numerous acts of wire fraud and/or trade secret misappropriation continued over the court of

11  several years from 2016-2019."  Opp'n 22.

12    The Court finds that ITU has not plausibly alleged a pattern of racketeering activity.  The

13  complaint alleges that Ryan "engaged in numerous acts of trade secret appropriation" and

14  "engaged in numerous acts of wire fraud."  Compl. ¶ 107, 114.  But the complaint does not

15  include a single fact to support Ryan's participation in any act of trade secret misappropriation or

16  wire fraud.  This failure to allege facts regarding Ryan's involvement in any predicate acts makes

17  it impossible for the Court to assess whether Ryan engaged in a pattern of racketeering activity.

18  *Cf. Fed. Rsrv. Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP, 1997 WL 227955, at *3

19  (N.D. Cal. Apr. 24, 1997) ("[T]he lack of clarity regarding the predicate acts makes it impractical

20  for the court to address the existence of a pattern more fully.").  More fundamentally, because ITU

21  has not alleged any facts to support that Ryan participated in a single act of racketeering activity,

22  ITU has necessarily failed to plausibly allege that Ryan participated in the two-act statutory

23  minimum necessary to establish a pattern.  *See* 18 U.S.C. § 1961(5).  Accordingly, the Court finds

24  that ITU has not plausibly alleged that Ryan participated in a "pattern" of racketeering activity for

25  either of its RICO claims.

26                                  *        *        *

27    In sum, the Court finds that ITU has not plausibly alleged the necessary racketeering

28  activity, conduct, or pattern to support its RICO claims against Ryan.  Accordingly, Ryan's

                                       20

1    motion to dismiss ITU's RICO claims (Claims 2 and 3) are DISMISSED WITH LEAVE TO

2    AMEND.  The Court notes that the deficiencies would apply equally to defendant O'Brien and

3    suggests any amendment to include additional allegations against O'Brien as well.

### 3.  Breach of Fiduciary Duty and Duty of Loyalty (Claim 6)

5         The Court next turns to ITU's claim against Ryan for breach of fiduciary duty and duty of

6    loyalty.  "The elements of a cause of action for breach of fiduciary duty are the existence of a

7    fiduciary relationship, its breach, and damage proximately caused by that breach."  *E.g.*, *Hodges v.*

8    *Cnty. of Placer*, 41 Cal. App. 5th 537, 546 (2019).

9         The parties do not appear to dispute that Ryan owed ITU a fiduciary duty.  Ryan instead

10   argues that ITU has not adequately alleged that he breached a duty to ITU or that ITU suffered

11   damage proximately caused by any breach.  Ryan Mot. 6.  ITU responds that Ryan breached his

12   fiduciary duty to ITU by simultaneously serving as ITU's Provost and Sofia's President.  Opp'n

13   24.  ITU further argues that Ryan's breaches include "trade secret misappropriation, inability to

14   devote sufficient time and attention to ITU, and use of ITU's confidential information to create a

15   competing program at Sofia University."  *Id.*  ITU contends that it suffered the following harm

16   due to the alleged breaches: lost money, revenue, employees, and staff arising from Ryan

17   promoting a competing university, and diminished goodwill and reputation arising from Ryan

18   allowing ITU to flounder while promoting a competing university.  *Id.*

19        The Court finds that ITU's allegation that Ryan simultaneously served as ITU's Provost

20   and Sofia's President does not, by itself, plausibly suggest that Ryan breached his fiduciary duties.

21   ITU has not cited, and the Court has not identified, any cases holding that an employee breaches

22   his fiduciary duty to his employer as a matter of law by holding a position with a competitor.  To

23   the contrary, California courts look to the acts of the fiduciary to determine whether they are in

24   good faith and do not interfere with the business.  *Cf. Indus. Indem. Co. v. Golden State Co.*, 117

25   Cal. App. 2d 519, 533 (1953) ("Generally, it is held that the directors or officers of a corporation

26   are not, by reason of the fiduciary relationship they bear towards the corporation and the

27   stockholders thereof, precluded from entering into and engaging in a business enterprise

28   independent from, though similar to, that conducted by the corporation itself, provided in doing so

United States District Court
Northern District of California

21

they act in good faith and do not interfere with the business enjoyed by the corporation."). ITU's allegation that Ryan simultaneously served as ITU's Provost and Sofia's President is therefore not sufficient by itself to plausibly allege that Ryan breached his fiduciary duties to ITU.

ITU's remaining allegations do not save its claim. ITU's allegation that Ryan breached his fiduciary duty by misappropriating trade secrets fails as a matter of law because it is preempted by the California Uniform Trade Secrets Act. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims . . . based on the same nucleus of facts as trade secret misappropriation." (internal citations omitted)). And ITU's allegations that Ryan was "[unable] to devote sufficient time and attention to ITU" and "use[d] of ITU's confidential information to create a competing program at Sofia University" are insufficient because they are conclusions that are not supported by any factual allegations. *Gradetech, Inc. v. City of San Jose*, 851 F. App'x 729, 730 (9th Cir. 2021) ("[W]e need not accept as true allegations that are vague, conclusory, or 'naked assertions devoid of further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678)).

Accordingly, ITU's claim for breach of fiduciary duty and duty of loyalty (Claim 6) is DISMISSED WITH LEAVE TO AMEND.

### 4. Breach of Employment Contract (Claim 9)

Finally, the Court addresses ITU's claim that Ryan breached an employment contract with ITU. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Ryan argues that ITU fails to state a claim for breach of contract because ITU has not pled the existence of a contract and has not pled any of the terms necessary to establish breach. Ryan Mot. 6-7. ITU responds by noting that Ryan accepted a position as ITU's Provost at a salary of $250,000 per year and arguing that "[f]ailing to spend time at a $250,00/year full-time provost job

22

is a breach of the agreement for Ryan to perform provost services." Opp'n 24.

The Court finds that ITU's complaint fails to state a claim against Ryan for breach of contract. First, ITU has not alleged whether contract was a written or oral. If it was an oral contract, it is subject to a two-year statute of limitations and is possibly time-barred. Cal. Code Civ. Proc. § 339(1). Second, ITU has not alleged the essential terms of the alleged contract. According to ITU, Ryan breached his employment contract by "[f]ailing to spend time at [his] $250,00/year full-time provost job." Opp'n 24. But ITU does not allege any contract term that required Ryan to spend a certain amount of time on the job. This is fatal to ITU's claim. *See AlterG*, 388 F. Supp. 3d at 1147 ("A complaint for breach of contract must include the contract itself or plead its essential terms."). Accordingly, ITU's breach of contract claim against Ryan (Claim 9) is DISMISSED WITH LEAVE TO AMEND.

Although the Court has dismissed the complaint as to the moving parties, ITU raises serious claims of embezzlement, theft, and deceit that it claims have left ITU on the brink of ruination. The Court anticipates that some of the deficient claims can be re-pled successfully and the claim against WSCUC may become ripe after a final accreditation decision is rendered so that ITU can seek a judicial determination of the accreditation decision if it is adverse to ITU. None of this is to suggest that the Court has a view as to the merits of Plaintiff's claims, but only to the seriousness of them.

//
//
//
//
//
//
//
//
//
//

23

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   WSCUC's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND the breach of contract claims but without prejudice to filing a due process claim or other viable claim in the event that the final accreditation decision is adverse to ITU;

2.   O'Brien's motion to dismiss is GRANTED WITH LEAVE TO AMEND; and

3.   Ryan's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

Plaintiff SHALL file an amended complaint within 30 days of this order.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this order will result in a dismissal of the deficient claims with prejudice.

Dated:  May 3, 2023

_____
BETH LABSON FREEMAN
United States District Judge

24